[No. B159242. Second Dist., Div. Five. July 3, 2003.]

SAM OSTAYAN, Plaintiff and Appellant, v.
NORDHOFF TOWNHOMES HOMEOWNERS ASSOCIATION, INC.,
Defendant and Respondent.

COUNSEL

Ezer Williamson & Brown and Mitchel J. Ezer for Plaintiff and Appellant.

Beach, Procter, McCarthy & Slaughter, William M. Slaughter and Sean D. Cowdrey for Defendant and Respondent.

OPINION

**MOSK, J.**—Defendant Nordhoff Townhomes Homeowners Association, Inc. (the Association) obtained summary judgment in the trial court on a complaint alleging (1) that the Association had been negligent and had breached its fiduciary duty to former Association member and plaintiff Sam Ostayan (Ostayan) and (2) a constructive trust of a portion of the funds received by the Association in a lawsuit against its insurance carrier. Ostayan claims he is entitled to a share of the litigation settlement proceeds received by the Association after Ostayan sold his condominium because he had not been informed of the litigation prior to the sale. Seeking reversal of the summary judgment, Ostayan contends that the trial court erred in concluding that the Association did not have a duty to notify its members that it had filed litigation against its insurance carrier. He further contends that summary judgment was erroneously granted because he raised a triable issue of material fact as to whether the Association notified its members of the lawsuit within a reasonable time. We hold that the Association had no duty to notify its members of the filing of the litigation and that even if the Association had any duty of notification, it complied with that duty. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

The Northridge earthquake of January 17, 1994, damaged the complex of townhouses in North Hills owned by members of the Association. Ostayan purchased an uninhabitable unit, Unit 13, on June 11, 1997, from the Department of Housing and Urban Development for $25,000. Upon purchasing the townhouse, Ostayan became a member of the Association—a California nonprofit corporation—and paid monthly dues to it for the duration of his ownership of the townhouse. Ostayan never resided in the townhouse he purchased. He sold Unit 13 to Ismael and Maria Estrada (the Estradas) on July 22, 1998, for $53,500.

The Association was engaged in a dispute regarding earthquake damage with its insurance carrier for a period that included the time Ostayan owned Unit 13. The Association negotiated with the insurance carrier over several years to settle earthquake–related claims, and the dispute with the carrier was a frequent subject at meetings of the Association's board of directors.

Prior to filing of the suit against the insurer, the Association notified its members of the existence of the dispute with its insurer. In a notice dated July 14, 1997 to the homeowners in the complex, the Association wrote, "We have had some more meetings with D[epartment of] W[ater and] P[ower] representatives and inspectors and with the insurance company, architect, engineer

---

[1] We state the evidence supplied by appellant in accord with the summary judgment standard of review, which standard we discuss *post*, at page 125.

and adjuster and with our own engineering and legal representative regarding the electrical vault. DWP has ruled that the vault is definitely our responsibility. The cost to repair it is somewhere in the $100,000.00 neighborhood. We have asked our insurance carrier to cover the cost of repairs. Our representative has been pursuing the funds, but, as of the writing of this, the insurance company has not responded to us as to their intentions."

The Association sent its members a notice, dated September 15, 1997, and entitled, "Important Earthquake Repair Update," that referred to the possibility of legal action. The notice read, in pertinent part, "We on the executive committee of the Board want you to be aware that we are still fighting for the money the insurance company owes us from the claim. Should we have to take further legal action, we are prepared to do so. There seems to have been a miscalculation by the insurance company for which we have made a demand but, as yet, we have not received the funds. Also, we are demanding that they pay for the damaged electrical vault, but again they have been dragging their feet."

An October 23, 1997 message to Association members noted, "The insurance company has, at this point, denied our request for the money which we feel they erroneously withheld. They also will not, at this time, entertain any requests for giving us our hold-back money. PCI [Project Control, Inc.] tells us that [the insurer] is famous for NEVER giving their insured the hold-back money, so we cannot count on it. [The insurer] has also been dragging their feet responding to our requests for them to assume the responsibility for the electrical vault. Our attorney is in hot pursuit of [the insurer] for this very expensive vault replacement."

Ostayan admitted receiving these three communications from the Association. Ultimately, the Association filed a bad faith insurance suit against the insurer on April 3, 1998. The Association notified its members of the filing of the litigation by notice dated July 29, 1998—one week after Ostayan had sold Unit 13 to the Estradas. In May 2000, the Association's lawsuit against the insurer was settled for $20 million. The Association later distributed the settlement funds to the then present members of the Association. The Estradas, the owners of Unit 13, received $180,000.

Ostayan filed the instant action, alleging claims for breach of fiduciary duty, negligence, and a constructive trust based on the Association's failure to give him notice of the filing of the litigation. The Association filed a motion for summary judgment on the ground that no duty existed to notify the members of the Association of the filing of the litigation. The trial court ruled that the Association had no duty to notify Ostayan of the filing of the lawsuit against the insurer and therefore granted summary judgment. Judgment was entered in the Association's favor, and this appeal followed.

## DISCUSSION

### I. *Standard of Review*

Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) In reviewing an order granting summary judgment, the appellate court independently determines whether, as a matter of law, the motion for summary judgment should have been granted. "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).)

A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) In order to obtain a summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action .... Although he remains free to do so, the defendant need not himself conclusively negate any such element ...." (*Aguilar, supra,* 25 Cal.4th at p. 853.)

Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (*Aguilar, supra,* 25 Cal.4th at p. 849; Code Civ. Proc., § 437c, subd. (p)(2).) If the plaintiff does not make this showing, summary judgment in favor of the defendant is appropriate.

### II. *Claims*

Ostayan's complaint alleged causes of action for both breach of fiduciary duty and negligence. In the negligence cause of action, Ostayan alleged that the Association owed him a duty to inform him of the filing of the insurance litigation because he was a member of the Association and because the action was filed "for plaintiff's benefit as one of the Association's member/owners." The gravamen of the negligence claim was the Association's alleged fiduciary duty—not an independent duty arising under general negligence principles. Ostayan confirmed that his negligence claim was premised on the theory of the Association's fiduciary duty by arguing to the trial court that "the 'duty' element of negligence is established as a matter of law by the fiduciary

relationship between the Association and its members." Ostayan's constructive trust claim similarly was based upon the violation of the Association's alleged fiduciary duty to him. Because Ostayan's claims are based on the allegation that the Association owed Ostayan a fiduciary duty to disclose the filing of the litigation against the Association's insurer and because the operative complaint does not allege other potential causes of action, we address only whether there was a fiduciary duty to disclose this information, the issue framed by Ostayan's pleadings. (*Schoendorf v. U.D. Registry, Inc.* (2002) 97 Cal.App.4th 227, 236 [118 Cal.Rptr.2d 313] [the pleadings frame the issues to be decided on summary judgment]; *Aguilar, supra,* 25 Cal.4th at p. 844 [summary judgment to be granted upon a showing "that there is no issue requiring a trial as to any fact that is necessary under the pleadings, and, ultimately, the law"].)

III.  *Applicable Provisions*

■  A condominium complex is classified as a common interest development under California law. (Civ. Code, § 1351, subds. (c)(2), (f).) Civil Code section 1363, subdivision (a) provides that "A common interest development shall be managed by an association which may be incorporated or unincorporated." This association is often referred to as a "community association" (Civ. Code, § 1363, subd. (a)) or a homeowners association.

■  A homeowners association has a fiduciary relationship with its members—at least with respect to dealing with the homeowner's unit. (*Kovich v. Paseo Del Mar Homeowners' Assn.* (1996) 41 Cal.App.4th 863, 867 [48 Cal.Rptr.2d 758] ["A homeowners association has a fiduciary relationship with its members"].) As the Supreme Court said, however, "the relationship between the individual owners and the managing association of a common interest development is complex. (*Frances T. [v. Village Green Owners Assn.* (1986)] 42 Cal.3d [490,] 507–509 [229 Cal.Rptr. 456, 723 P.2d 573]; see also *Duffey v. Superior Court,* (1992) 3 Cal.App.4th 425, 428–429 [4 Cal.Rptr.2d 334] [noting courts 'analyze homeowners associations in different ways, depending on the function the association is fulfilling under the facts of each case' and citing examples]; *Laguna Publishing Co. v. Golden Rain Foundation* (1982) 131 Cal.App.3d 816, 844 [182 Cal.Rptr. 813]; *O'Connor v. Village Green Owners Assn.* (1983) 33 Cal.3d 790, 796 [191 Cal.Rptr. 320, 662 P.2d 427]; *Beehan v. Lido Isle Community Assn.* (1977) 70 Cal.App.3d 858, 865–867 [137 Cal.Rptr. 528].) On the one hand, each individual owner has an economic interest in the proper business management of the development as a whole for the sake of maximizing the value of his or her investment. In this aspect, the relationship between homeowner and association is somewhat analogous to that between shareholder and corporation. On the other hand, each individual owner, at least while residing in the development, has a personal, not strictly economic, interest in the appropriate

management of the development for the sake of maintaining its security against criminal conduct and other foreseeable risks of physical injury. In this aspect, the relationship between owner and association is somewhat analogous to that between tenant and landlord. [Citation.]" (*Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249, 266–267 [87 Cal.Rptr.2d 237, 980 P.2d 940] (*Lamden*).)

■ The duties and powers of a homeowners association are controlled both by statute and by the association's governing documents. The primary governing document of the association is the declaration—the document that contains a legal description of the development and "the restrictions on the use or enjoyment of any portion of the common interest development that are intended to be enforceable equitable servitudes." (Civ. Code, § 1353, subd. (a).) This document is frequently referred to as the "covenants, conditions, and restrictions," or the "CC&R's." Other documents included in the governing documents of the association are "documents, such as bylaws, operating rules of the association, articles of incorporation, or articles of association, which govern the operation of the common interest development or association." (Civ. Code, § 1351, subd. (j).)

The only governing document for the Association in the record on appeal is the CC&R's. The CC&R's provide the Association with all rights and powers necessary to carry out its responsibilities. They specify a number of responsibilities for the Association, including providing maintenance and services to the complex, preparing a budget, and securing legal services for the Association. The CC&R's also obligate the Association to give notice in various contexts. For instance, the Association must provide the members with a budget not less than 60 days prior to the beginning of the fiscal year. The board must give notice if it intends to cause repairs to any unit. Members must be notified in advance of the initiation of any capital assessments. Among the "Common Expenses" referred to in the CC&R's are costs and expenses incurred by the Association to collect or recover insurance proceeds, including attorney fees. There is no provision in the CC&R's requiring the Association to notify its members of the filing of litigation.

■ The statutory duties of homeowners associations are set forth in the Davis-Stirling Common Interest Development Act (Civ. Code, § 1350 et seq.) and the Nonprofit Mutual Benefit Corporation Law (Corp. Code, § 7110 et seq.). (Civ. Code, § 1363, subd. (c).) These statutes establish comprehensive procedures and obligations concerning the operation of associations, including the conduct of meetings, the expenditure of funds, communications with members, and the provision of financial and other information to association members. (See, e.g., Civ. Code, §§ 1363.05, 1365, 1365.1, 1365.5; Corp. Code, §§ 5510 et seq., 6311, 6321.) ■ It is when an association transfers

reserve funds to pay for litigation that it needs to notify members of that decision, and then "in the next available mailing." (Civ. Code, § 1365.5, subd. (d).) The Legislature imposed upon homeowners associations the duty of giving written notice of intended litigation to association members, but only when the association plans to sue regarding construction defects. (Civ. Code, § 1368.4.)[2]

The Legislature enacted extensive requirements for homeowners associations, including provisions for keeping members informed of their activities. Yet the Legislature did not require that homeowners associations give to their members written notice of litigation they file (other than intended litigation against developers for construction defects).[3]

At least with respect to issues of repairs and maintenance, the Supreme Court has held that "courts should defer to the board's authority and presumed expertise." (*Lamden, supra,* 21 Cal.4th at p. 265.) Moreover, the court suggested that if the association were incorporated, as it is here, its directors would be subject to the "business judgment" rule. "A hallmark of the business judgment rule is that, when the rule's requirements are met, a court will not substitute its judgment for that of the corporation's board of directors." (*Id.* at p. 257.) Those requirements are that the directors act in good faith and in what they believe to be the organization's best interests. (*Ibid.*) " 'Generally, courts will uphold decisions made by the governing board of an owners association so long as they represent good faith efforts to further the purposes of the common interest development, are consistent with the development's governing documents, and comply with public policy.' [Citation.]" (*Id.* at p. 265.)

---

[2] Civil Code section 1368.4, subdivision (a) provides that unless specific exceptions apply, when a homeowners association intends to file a civil suit against a developer "for alleged damage to the common areas, alleged damage to the separate interests that the association is obligated to maintain or repair, or alleged damage to the separate interests that arises out of, or is integrally related to, damage to the common areas or separate interests that the association is obligated to maintain or repair, the board of directors of the association shall [] provide written notice to each member of the association who appears on the records of the association when the notice is provided." Notice must be provided no later than 30 days prior to the filing of the action and must specify the time and date of the meeting to discuss the problem leading to the possible litigation and the options, including litigation, that are available to address the problem. (Civ. Code, § 1368.4, subd. (a).)

[3] Recognizing that "[L]egislative inaction is 'a weak reed upon which to lean,' " (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1156 [278 Cal.Rptr. 614, 805 P.2d 873]), it is interesting that in the legislative history of Civil Code section 1368.4, the records of the Assembly Committee on Housing and Community Development include the question of whether proposed Civil Code section 1368.4 should be expanded beyond construction defects to "actions which may involve significant financial considerations." (Assem. Com. on Housing and Community Development, Analysis of Assem. Bill No. 463 (1995–1996 Reg. Sess.) Mar. 29, 1995, p. 6.) No such expansion was enacted.

## IV. *No Duty of Disclosure*

Ostayan argues that the Association owes him a duty of disclosure beyond the duties imposed by statute and the CC&R's—a duty arising from the fiduciary relationship between the Association and its members. The CC&R's and applicable law give the Association the authority to perform various tasks, including initiating lawsuits to collect insurance proceeds. ■ The Association is required to keep financial records, perform accountings, allow inspection of those records and accountings by members, prepare budgets that are sent to the members, have meetings, and issue annual reports. In addition, if actions may not be authorized or exceed the budget or special assessments have to be made, the members must vote to approve them. (See Civ. Code, §§ 1363.05, 1365, 1365.5.) These are the obligations of the Association to keep its members apprised of its activities.

Filing the action against the insurance company was within the scope of the Association's authority. The CC&R's and statutes did not obligate the Association to give notice to the members of the filing of the lawsuit. Whether and when to give any further notice was within the discretion of the Association's board of directors. The board exercised that discretion by providing notice of the dispute with the insurance carrier and then, after the action against the insurer was commenced, of the action itself. There is no allegation or evidence that the board's decision of when and whether to give notice of the litigation was made in bad faith or was not in the interest of the Association.

The Association cannot be expected to make disclosures so as to impart information in relation to every possible sale of a unit within the development. Were there such a requirement, the Association's time could be consumed with the preparation of disclosure statements. Any such rule would also render redundant the procedure of annual reports, meetings, and the disclosures of budgets established by statute.

If Ostayan had wanted information concerning the dispute with the Association's insurer, he could have exercised his right to inspect the Association's records—or even queried a director. Then he would have been armed with all the information he now claims he needed before selling his unit. Having failed to gather this information through the methods provided by law and the CC&R's, Ostayan cannot now shift the blame for failing to do so to the Association for its purported failure to fulfill a duty.

## V. *Disclosure was provided*

Even assuming, arguendo, that the Association had some duty to Ostayan of disclosure of the litigation, the Association satisfied that duty with its disclosures of its dispute with the insurer.

■ The general duty of disclosure extends only to material facts. (Chodos, The Law of Fiduciary Duties (2000) § 3:34, p. 212; *Ball v. Posey* (1986) 176 Cal.App.3d 1209, 1214 [222 Cal.Rptr. 746] ["The duty of a fiduciary embraces the obligation to render a full and fair disclosure to the beneficiary of all facts that materially affect his rights and interests"].) Here, the material fact was the existence of a dispute with the insurer over the scope of coverage and over the conduct of the insurer with respect to its handling of the claim—a dispute that could have resulted in a wide variety of outcomes, including litigation (with its range of resolutions), abandonment of the claim, or an out-of-court settlement of the dispute. The Association's disclosure of the dispute with the insurer was sufficient. Ostayan received three communications from the Association concerning the dispute with the insurer that adequately informed him that a coverage and bad faith dispute existed with respect to the damage caused by the 1994 Northridge earthquake. With this information, Ostayan had his own responsibility to ascertain "the precise nature and scope" of the status of the dispute with the insurance carrier if such information was "material to [his] decision to [sell the] unit." (*Pagano v. Krohn* (1997) 60 Cal.App.4th 1, 12 [70 Cal.Rptr.2d 1] (*Pagano*).)

The decisions in *Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399 [98 Cal.Rptr.2d 176] and *Pagano, supra,* 60 Cal.App.4th 1, referred to by Ostayan, do not compel a different result. Not only do both cases involve different factual settings than that here—the duty of disclosure of the seller of a property (or its agent) to the buyer—but both cases stand merely for the principle that material facts concerning defects must be disclosed to the purchaser in a real estate transaction. In both cases, the courts found that the disclosures were sufficient to put the buyers on notice of certain defects.

Because Ostayan was notified of the subject matter of the dispute with the insurer, if there were any duty on the part of the Association to provide, it was satisfied.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

Turner, P. J., and Armstrong, J., concurred.