[No. B188263. Second Dist., Div. Five. Jan. 22, 2007.]

JOSE CASTILLO, Plaintiff and Appellant, v.
MARCO ANTONIO BARRERA et al., Defendants and Respondents.

**COUNSEL**

Carlsmith Ball and James E. Blancarte for Plaintiff and Appellant.

Matheny Sears Linkert & Long and Eric R. Wiesel for Defendants and Respondents.

OPINION

**KRIEGLER, J.**—A boxing manager is defined by California law as any person who undertakes to represent in any way the interest of a professional boxer with respect to the arrangement or conduct of any professional boxing contest, or any person who directs or controls the activities of any professional boxer. A contract to manage a professional boxer must be in writing, and managers must be licensed by the State Athletic Commission (the commission).

Plaintiff and appellant Jose Castillo filed a complaint alleging defendant and respondent Marco Antonio Barrera, a professional boxer and two-time world champion, breached an oral agreement for Castillo to manage Barrera's career. The trial court granted summary judgment in favor of Barrera, and defendants and respondents Barrera Promotions, Inc., and Marco Antonio Boxing, Inc., on the basis that Castillo was not a licensed manager and his pleading of an oral agreement with Barrera was a binding judicial admission. We reject Castillo's appellate challenge to the grant of summary judgment and affirm.

## ALLEGATIONS IN CASTILLO'S COMPLAINT

Castillo's complaint alleged three causes of action—breach of contract, fraudulent inducement to enter a contract, and quantum meruit. The complaint alleged that "Castillo is the former manager" of Barrera. Barrera is the president of Barrera Promotions, Inc., and Marco Antonio Boxing, Inc., entities created to promote and market Barrera.

Richard Maldonado served as Barrera's manager pursuant to a written boxing management contract "[p]rior to . . . Castillo being the manager for defendant Barrera." Barrera terminated his contract with Maldonado in May 2003. Thereafter, also in May 2003, Castillo "agreed orally to assume all the professional duties and responsibilities of being . . . Barrera's manager and take the place of ex-manager Maldonado." It was mutually understood that Castillo would be paid in accord with the "practice in the professional boxing industry, but in no case less than ten percent (10%) of the gross revenue" generated by Barrera as a boxer and through endorsements.

Since May 2003, Castillo, as manager for Barrera, played a direct role in all matters pertaining to his boxing career, including managing his business and personal affairs. In particular, Castillo negotiated an exclusive boxing promotion contract with Golden Boy Promotions, Inc., which is owned and operated by Oscar De La Hoya. Castillo assisted Barrera in settling three

lawsuits which allowed Barrera to continue his boxing career, as well as extricating Barrera from tax problems which could have hampered his career.

In October 2004, Barrera and Castillo met and agreed to amend and modify the amount owed for Castillo's "professional services in accord with the established customs and practices of the professional boxing industry." Castillo performed all of the obligations under his oral management contract with Barrera and was due $275,000 in consideration. Barrera abruptly cut off the contract and communication with Castillo.

## THE MOTION FOR SUMMARY JUDGMENT AND OPPOSITION

### A. *Defendants' Summary Judgment Motion*

Defendants moved for summary judgment on the basis that Castillo alleged he was Barrera's boxing manager pursuant to an oral contract and Castillo was not licensed as a manager in California, contrary to California law requiring that contracts to manage professional boxers be in writing and managers be licensed by the commission. Defendants relied upon the allegations in Castillo's complaint to establish that Castillo's contract to manage Barrera was an oral agreement. Defendants presented evidence from the commission to demonstrate that Castillo was not licensed.

### B. *The Opposition to Summary Judgment and Castillo's Declaration*

Castillo's opposition to summary judgment argued defendants had misconstrued the allegations in the complaint that he was Barrera's boxing manager. According to the opposition, Castillo's description of himself as manager was a conclusion not supported by the underlying factual allegations in the complaint.

Castillo filed a declaration in support of his opposition to summary judgment, containing the following facts. Castillo first met Barrera in 1994. In December 2002, Barrera told Castillo he was starting to question Maldonado's actions as his manager. Castillo contacted a friend at Golden Boy Productions, a company started by Oscar De La Hoya, asking questions on behalf of Barrera about the business aspects of boxing. Castillo later recommended that Barrera consider Golden Boy Productions to promote his boxing matches.

Barrera decided to fire Maldonado as his manager, but a new manager was not hired. Barrera said a manager was not needed if a boxer had a good promoter, and he was his own manager. After terminating Maldonado, Golden

Boy Productions scheduled and promoted Barrera's fights, while Castillo and others provided business advice. Barrera relied on his trainer, as well as his brother and father, for boxing guidance. Castillo had no role in picking opponents or arranging fights.

In March 2003, Castillo met with a law firm to discuss the termination of Barrera's relationship with Maldonado. Castillo arranged for counsel to represent Barrera in tax matters in the United States and Mexico. During the fall of 2003, Castillo acted as business and financial advisor to Barrera. He was the chief client contact for Barrera in settlement negotiations with Maldonado. Castillo set up a match with Manny Pacquaio to be held in Texas in November 2003. Castillo performed administrative services on behalf of Barrera, including scheduling of meetings, travel, accommodations, and driving Barrera to meetings, doctors' appointments, media conferences, and interviews. Castillo spent at least 400 to 500 hours working on Barrera's behalf in 2003. He never held himself out as Barrera's boxing manager, nor did he perform those functions. Castillo had no role in training, picking opponents, or arranging fights for Barrera. Castillo agreed to take less than the amount owed to him under the arrangement with Barrera, but Barrera did not intend to honor his promises and did not pay Castillo for the services provided.

## C. *The Trial Court's Ruling on the Summary Judgment Motion*

The trial court took judicial notice of Castillo's complaint on defendants' request. The trial court ruled that Castillo was bound by his own pleadings, specifically the repeated references in the complaint to Castillo's acting as Barrera's manager. Citing the rule that an admission in a pleading is conclusive, the trial court found that Castillo's declaration was insufficient to establish a material issue of fact. Noting that California law requires that boxing managers be licensed and contracts be in writing on a form approved by the commission, the trial court ruled Castillo's allegation that he was a party to an oral management agreement was fatal to his contract and quantum meruit causes of action.

## STANDARD OF REVIEW

"Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) In reviewing an order granting summary judgment, the appellate court independently determines whether, as a matter of law, the motion for summary judgment should have been granted. 'The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial

is in fact necessary to resolve their dispute.' (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).)

"A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2)). In order to obtain a summary judgment, 'all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action . . . . Although he remains free to do so, the defendant need not himself conclusively negate any such element . . . .' (*Aguilar, supra,* 25 Cal.4th at p. 853.)

"Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (*Aguilar, supra,* 25 Cal.4th at p. 849; Code Civ. Proc., § 437c, subd. (p)(2).) If the plaintiff does not make this showing, summary judgment in favor of the defendant is appropriate." (*Ostayan v. Nordhoff Townhomes Homeowners Assn., Inc.* (2003) 110 Cal.App.4th 120, 125 [1 Cal.Rptr.3d 528].)

## DISCUSSION

### A. *Castillo's Contentions*

Castillo contends his characterization of himself as Barrera's manager was a mere conclusion that did not rise to the level of a judicial admission that he was Barrera's manager within the meaning of Business and Professions Code section 18628.[1] From this premise, Castillo argues his declaration and discovery responses demonstrate there was a material issue of fact as to whether he was Barrera's boxing manager, and, as a result, it was error to grant summary judgment. In Castillo's view, there was a material issue of fact as to whether he was Barrera's manager, since his declaration and discovery responses established he was not responsible for training Barrera or working in his corner during fights and promotion of Barrera's fights was handled by Golden Boy Productions. Castillo further argues it was error to apply California law to his complaint under section 18640, because the Pacquaio fight took place in Texas and California law does not apply to out-of-state fights. Finally, Castillo argues the trial court should not have applied the rule requiring boxing managers to have a written contract to the quantum meruit cause of action because he devoted 400 to 500 hours of labor to Barrera without any compensation.

---

[1] All further statutory references are to the Business and Professions Code, unless otherwise stated.

B. *Castillo's Judicial Admissions Support Summary Judgment*

Castillo argues the trial court erred in concluding the allegations in his complaint constituted judicial admissions, which could not be contradicted with Castillo's declaration in opposition to summary judgment. Citing *Bahan v. Kurland* (1979) 98 Cal.App.3d 808, 812–813 [159 Cal.Rptr. 661] (*Bahan*), Castillo characterizes his allegations that he acted as Barrera's manager as mixed factual-legal conclusions, which did not rise to the level of judicial admissions and could be contradicted in order to avoid summary judgment. We conclude the reasoning in *Bahan* provides no support for Castillo's contention, given the specific allegations in his complaint.

■ "A defendant moving for summary judgment may rely on the allegations contained in the plaintiff's complaint, which constitute judicial admissions. As such they are conclusive concessions of the truth of a matter and have the effect of removing it from the issues." (*Uram v. Abex Corp.* (1990) 217 Cal.App.3d 1425, 1433 [266 Cal.Rptr. 695]; see also *St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.* (2003) 111 Cal.App.4th 1234, 1248 [4 Cal.Rptr.3d 416] [judicial admissions are conclusive concessions of the truth of those matters and are removed as issues from the litigation]; *Uhrich v. State Farm Fire & Casualty Co.* (2003) 109 Cal.App.4th 598, 613 [135 Cal.Rptr.2d 131] ["a judicial admission cannot be rebutted: It estops the maker"]; *Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 871 [64 Cal.Rptr.2d 324] [judicial admissions in a complaint overcome evidence even if the opposing party seeks to contradict the prior admission].) " 'While inconsistent *theories* of recovery are permitted [citation], a pleader cannot blow hot and cold as to the facts positively stated.' " (*Brown v. City of Fremont* (1977) 75 Cal.App.3d 141, 146 [142 Cal.Rptr. 46].)

On the other hand, a mere conclusion, or a "mixed factual-legal conclusion" in a complaint, is not considered a binding judicial admission. (*Bahan, supra,* 98 Cal.App.3d at p. 812.) A mixed factual-legal conclusion may be contradicted by a declaration or other evidence in order to overcome a motion for summary judgment. (*Ibid.*)

The plaintiff in *Bahan* alleged he had been solicited to commit burglary and murder by the defendant, who was his treating psychiatrist. The plaintiff made two distinct allegations regarding his psychiatrist's status. First, he alleged the clinic employing the psychiatrist was an agency of the State of California, and the psychiatrist was acting within the scope of his agency and employment. Second, the plaintiff alleged the psychiatrist " 'acted upon his own initiative.' " As it turned out, the clinic was part of a local district and not a California agency. A claim was made under the Tort Claims Act against the state; no claim was made against the local district actually employing the

psychiatrist. The psychiatrist moved for summary judgment on the basis that the plaintiff alleged the psychiatrist was acting within the purpose and scope of his employment, but no claim had been made under the Tort Claims Act against his actual employer (the local district). (*Bahan, supra,* 98 Cal.App.3d at pp. 810–811.) The trial court granted summary judgment, ruling that the plaintiff was bound by the allegation in the complaint that the psychiatrist acted within the scope of his employment, and because no claim had been made with the local district employing the psychiatrist, the action was barred. (*Id.* at p. 811.)

The summary judgment was reversed on appeal in *Bahan.* The *Bahan* court noted that, given the nature of the conduct alleged, it was unlikely that solicitation of a burglary and murder was within the scope of employment of a psychiatrist. In any event, the court held that the allegation that the psychiatrist acted within the scope of his employment "is at best an allegation of a mixed factual-legal conclusion drawn by the pleader from underlying facts. When the underlying facts pleaded and averred in declarations in opposition to a motion for summary judgment belie the pleaded conclusion, and indicate the existence of an important fact question, the mistaken conclusion on the part of a pleader should not preclude a trial on the issue on its merits. [¶] . . . [¶] Whether [the psychiatrist's] conduct was within the scope of his employment constitutes a triable issue of fact." (*Bahan, supra,* 98 Cal.App.3d at pp. 812–813.)

Castillo's repeated allegations that he acted as Barrera's manager are not comparable to the one-sentence allegation in the complaint in *Bahan* that the psychiatrist was acting within the scope of his employment. Nor is Castillo's characterization of himself as Barrera's manager belied by the underlying facts in the complaint. A sampling of some of the language in Castillo's complaint demonstrates the extent to which he described himself, in unambiguous terms, as Barrera's manager: "Jose Castillo is the former manager of . . . Barrera"; "Prior to . . . Castillo being the manager for . . . Barrera"; "Castillo . . . agreed orally to assume all professional duties and responsibilities of being . . . Barrera's manager and take the place of ex-manager Maldonado"; "Castillo, as the manager for . . . Barrera, has played a direct, active and significant role in all matters pertaining to . . . Barrera's professional boxing career"; "In 2003, in his capacity as . . . Barrera's manager"; "Castillo, at the specific instance [*sic*] and request of . . . Barrera, agreed to, and did in fact assume exclusive and direct control of management of [Barrera's] career"; and "Castillo's responsibilities as . . . Barrera's manager also included . . . ." "Barrera met with . . . Castillo in an attempt to amend, modify and discount the compensation . . . as mutually agreed to [in] the May, 2004 Oral Management Contract"; "Castillo performed all of his obligations under the Oral Management Contract"; and "Barrera acted in material breach of the Oral Management Contract."

As the above quoted language from Castillo's complaint conclusively demonstrates, he alleged the existence of an oral contract to manage Barrera's boxing career. Having repeatedly set forth the allegation as his status of manager, he was not entitled to change course in response to a summary judgment motion and argue he was not filing suit in his capacity as manager. The *Bahan* line of reasoning has no application to Castillo's complaint. Instead, the rule that one may not contradict the allegations of a complaint in response to a summary judgment motion is applicable and was properly imposed upon Castillo by the trial court.

C. *Propriety of Summary Judgment Without Finding Judicial Admissions*

Assuming Castillo's characterization of himself as Barrera's manager was not a binding judicial admission, a review of his complaint and declaration demonstrates that Castillo was acting as a boxing manager as a matter of law and summary judgment was properly granted. The conduct alleged by Castillo was related to the arrangement or conduct of a contest in which Barrera was to participate, and Castillo functioned so as to direct or control Barrera's career as a professional boxer.

Professional boxing is regulated in California in section 18600 et seq., known as the Boxing Act. California Code of Regulations, title 4, section 220 et seq. supplements the statutory framework. A " 'manager' " is defined in section 18628 and "means any person who does any of the following: [¶] (a) By contract, agreement, or other arrangement with any person, undertakes or has undertaken to represent in any way the interest of any professional boxer, or martial arts fighter in procuring, or with respect to the arrangement or conduct of, any professional contest in which the boxer or fighter is to participate as a contestant; except that the term 'manager' shall not be construed to mean any attorney licensed to practice in this state whose participation in these activities is restricted to representing the legal interests of a professional boxer or fighter as a client. Otherwise, an attorney shall be licensed as a manager in order to engage in any of the activities described in this section. [¶] (b) Directs or controls the professional boxing or martial arts activities of any professional boxer or martial arts fighter. [¶] (c) Receives or is entitled to receive more than 10 percent of the gross purse of any professional boxer or martial arts fighter for any services relating to such person's participation in a professional contest. [¶] (d) Is an officer, director, shareholder, or member of any corporation or organization which receives, or is entitled to receive more than 10 percent of the gross purse of any professional boxer or martial arts fighter for any services relating to the person's participation in a professional contest."

■ Section 18642 requires a manager to be licensed by the commission. The commission is required to prescribe necessary standards for licensure of

managers. (§ 18648.) An application for a manager's license must be in writing and signed under penalty of perjury. (§ 18673.) Contracts between boxers and managers "shall be executed on printed forms approved by the commission." (Cal. Code Regs., tit. 4, § 220.) No other form of contract "may be recognized or enforced by the commission." (*Ibid.*) "Unless otherwise directed by the commission, a contract between a boxer and a manager is not valid unless both parties appear at the same time before the commission or a commission representative and it receives written approval." (Cal. Code Regs., tit. 4, § 222.) A verbal agreement shall not be accepted by the commission. (Cal. Code Regs., tit. 4, § 230, subd. (a).) Acting as a manager without a license is a misdemeanor under section 18878.

The conduct Castillo alleged he engaged in, on behalf of Barrera, falls within the statutory definition of a manager. It bears emphasis that the language of section 18628 broadly defines manager as a "person who does any" of a variety of duties, including one who "undertakes or has undertaken to represent in any way the interest of any professional boxer," "in procuring, or with respect to the arrangement or conduct of, any professional contest in which the boxer or fighter is to participate as a contestant," or who "[d]irects or controls the professional boxing . . . activities of any professional boxer."

A review of the underlying factual allegations in Castillo's complaint demonstrates that all of his conduct fell within the broad statutory definition of a manager. He agreed to assume responsibility as Barrera's manager in accord with the established custom in the professional boxing industry, for not less than 10 percent of Barrera's earnings. He played a direct role "in all matters" pertaining to Barrera's boxing career, "including, without limitation, managing his business and personal affairs." Castillo negotiated Barrera's promotional contract with Golden Boy Promotions. He made diligent efforts to settle three lawsuits involving Barrera, in order to extricate Barrera from "career turmoil." Castillo played a direct and instrumental role in the settlement of three lawsuits, "thereby allowing . . . Barrera to continue with his professional boxing career." Castillo worked with an attorney to extricate Barrera from tax problems and helped him obtain medical clearances "which could have otherwise hampered or damaged his career."

In sum, Castillo's complaint alleges that he engaged in conduct falling within the statutory definition of a manager of a professional boxer. An examination of Castillo's declaration leads to the same conclusion.

Castillo stated in his declaration that he arranged for Barrera to meet with representatives of Golden Boy Promotions and recommended that Barrera enter into a promotional agreement. After Barrera fired Maldonado, Castillo "undertook a number of matters on Barrera's behalf." These activities

included meeting with attorneys to discuss Maldonado's termination, arranging for an attorney to represent Barrera on tax issues, preparing a news release regarding the termination of his relationship with Maldonado, conducting followup meetings regarding litigation involving Barrera, acting as business and financial advisor for Barrera regarding a fight in Texas against Pacquaio, and performing numerous other administrative services on Barrera's behalf, including scheduling of business meetings, travel accommodations, and driving Barrera to meetings, doctors' appointments, media conferences, and interviews.

It is clear from Castillo's declaration that he undertook to represent the interests of Barrera as a professional boxer. He also undertook the arrangement of a professional fight with Pacquaio in Texas. All of the conduct set forth by Castillo in his declaration described his representation of Barrera as a professional boxer.

 Because the record as a whole, including the complaint and Castillo's declaration, establishes that he acted as a manager without a written contract and without a license, summary judgment was properly granted.

### D. *Quantum Meruit*

Castillo argues the trial court erred in ruling the quantum meruit cause of action was also barred by the absence of a written contract. He contends Barrera will be unjustly enriched if not held responsible for payment for the 400 to 500 hours of work Castillo alleged he performed for Barrera. The argument fails.

 Castillo's quantum meruit pleading specifically incorporated the oral contract allegations of his complaint, which included his repeated assertions that he acted as Barrera's manager. As such, his quantum meruit claim plainly sought compensation for managing Barrera's fighting career in the absence of a written contract and a manager's license. To allow recovery under these circumstances would subvert the purpose of the Boxing Act and supporting regulations. As in other areas requiring written agreements or licensure, a party may not recover in quantum meruit for that which cannot be recovered on a contract. (See *Yoo v. Robi* (2005) 126 Cal.App.4th 1089, 1104, fn. 30 [24 Cal.Rptr.3d 740] [denying recovery to unlicensed talent agents]; *Pacific Custom Pools, Inc. v. Turner Construction Co.* (2000) 79 Cal.App.4th 1254, 1266 [94 Cal.Rptr.2d 756] [denying recovery to unlicensed contractor].)

 Moreover, Castillo does not raise a material issue of fact as to unjust enrichment. The essence of Castillo's argument is that he performed work for Barrera, but was not compensated for his efforts. The mere nonpayment for

services "does not constitute unjust enrichment." (*Phillippe v. Shapell Industries* (1987) 43 Cal.3d 1247, 1263–1264 [241 Cal.Rptr. 22, 743 P.2d 1279] ["To determine that mere nonpayment constitutes unjust enrichment sufficient for estoppel would also conflict with consistent holdings that licensed brokers, who cannot recover under oral agreements invalid under the statute of frauds, are also prohibited from recovery in quantum meruit for the reasonable value of their services. [Citations.]"].)

 It would be inconsistent with the provisions of California law requiring written boxing manager contracts, as well as licensure, to allow Castillo to recover by means of quantum meruit. "Generally a contract made in violation of a regulatory statute is void. Under this general rule, where a law requires, for regulatory rather than revenue purposes, that one procure a license before offering or performing certain services and provides a penalty for violation, the contract of an unlicensed person to perform such services will not be upheld." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 435–436 [30 Cal.Rptr.3d 755, 115 P.3d 41].) The sound rationale for denying recovery on an oral contract to manage a professional boxer is to deter managers working without a written contract or license from engaging in illegal activity. "The regulations governing the conduct of matches are designed to 'provide safeguards for the protection of persons engaging in the activity' and to protect them 'against their own ill-advised participation in an unregulated match.' [*Hudson v. Craft* (1949)] 33 Cal.2d [654,] 659 [204 P.2d 1]. The regulations governing boxing contracts, 4 Cal.Admin. §§ 256–59, 288, have a similar purpose which is, in the words of the district court, 'to safeguard boxers against the temptation to mortgage their futures.' " (*Foreman v. George Foreman Associates, Ltd.* (9th Cir. 1975) 517 F.2d 354, 356–357.) "Knowing they will receive no help from the courts in recovering for their legal activities, managers are less likely to enter into illegal arrangements." (*Yoo v. Robi, supra*, 126 Cal.App.4th at p. 1104 [talent agents]; see also *Waisbren v. Peppercorn Productions, Inc.* (1995) 41 Cal.App.4th 246, 262 [48 Cal.Rptr.2d 437] [same].)

The Boxing Act is a regulatory statute, and recovery on a quantum meruit theory in the absence of compliance with the act would be inconsistent with its regulatory purpose. "For many years, boxing was plagued by revelations of sordid abuses. Managers were accused of living off the earnings of impoverished fighters who received virtually nothing in return, having bartered away the right to their future earnings in exchange for the most meager present returns; close underworld connections often resulted in defrauding the public through the 'fixing' of fights. See, e.g., Report of the Governor's Committee on the Study of Boxing and Wrestling in California (1956); 6 Op.Atty.Gen. 122 (1945). These abuses ultimately prompted the extensive statutory and regulatory framework administered by the State Athletic Commission, a framework which has been described by the California Supreme

Court as evincing 'an unusually strong policy' of public regulation, one of whose primary goals is 'to provide safeguards for the protection of persons engaging in the activity.' *Hudson v. Craft*, [*supra*,] 33 Cal.2d [at pp.] 657–[659]." (*George Foreman Associates, Ltd. v. Foreman* (N.D.Cal. 1974) 389 F.Supp. 1308, 1313–1314 (*Foreman I*), some italics added, some italics omitted, affd. (1975) 517 F.2d 354, 356–357.)

### E. Summary Judgment as to a Bout Outside of California

Castillo argues summary judgment was improperly granted because his complaint alleged conduct on behalf of Barrera regarding a fight against Pacquaio that took place in Texas. Castillo argues the commission has no authority over fights in other states under section 18640.[2] As a consequence, Castillo maintains California law requiring a written manager's contract and a license should not be applied to out-of-state activity.

■ This issue was addressed and rejected in *Foreman I, supra*, 389 F.Supp. at page 1315. In *Foreman I*, the plaintiff argued "the Commission's jurisdiction, by statute, extends only to boxing matches in California, and that the Commission's rules are therefore inapplicable here since none of the bouts in question was sited in California." (*Foreman I, supra*, 389 F.Supp. at p. 1315, italics omitted.) In response to the territorial argument, the court held: "It is true that under § 18670, the Commission's jurisdiction is limited to bouts taking place in California; however, the regulations which the Commission has promulgated in aid of its exercise of that jurisdiction expressly cover all contracts between boxers and managers. There is no provision restricting the coverage of those rules to contracts relating to California boxing matches, and the court is certainly unable to say on this record that the Commission has exceeded its statutory mandate in purporting to regulate all boxer-manager contracts entered into in California." (*Ibid.*, italics omitted.)

The reasoning in *Foreman I* is sound. Castillo alleged he entered into a manager's contract with Barrera in California. He invoked the jurisdiction of the California court in order to enforce the contract. Given the regulatory scheme which California imposes on boxing, reflecting a public policy which is "unusually strong" (*Hudson v. Craft, supra*, 33 Cal.2d at pp. 657–659; see *Foreman v. George Foreman Associates, Ltd., supra*, 517 F.2d at

---

[2] Section 18640 provides in pertinent part as follows: "The commission has the sole direction, management, control of, and jurisdiction over all professional . . . boxing, . . . matches or exhibitions conducted, held, or given within this state. No event shall take place without the prior approval of the commission. No person shall engage in the promotion of, or participate in, a boxing . . . match, or exhibition without a license, and except in accordance with this chapter and the rules adopted hereunder."

pp. 356–357), Castillo was required to comply with California law if he acted as manager for Barrera, even as to fights held in other jurisdictions. The trial court properly ruled the oral contract was unenforceable, even as to a fight held in Texas.

## DISPOSITION

The judgment is affirmed. Defendants and respondents shall recover their costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

A petition for a rehearing was denied February 8, 2007, and appellant's petition for review by the Supreme Court was denied April 25, 2007, S150758.