Filed 1/29/15  Lasman v. First Nations Home Finance CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AVI LASMAN, | |
| Plaintiff and Appellant, | G050283 |
| v. | (Super. Ct. No. INC1107752) |
| FIRST NATIONS HOME FINANCE CORPORATION, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Riverside County, Harold W. Hopp, Judge.  Affirmed.

Avi Lasman, in pro. per., for Plaintiff and Appellant.

Incorvaia & Associates, Joel L. Incorvaia and G. Ehrich Lenz for Defendant and Respondent.

# INTRODUCTION

Appellant Avi Lasman appeals from a judgment entered in favor of respondent First Nations Home Finance Corporation (First Nations) after the trial court granted First Nations' motion for summary judgment. Lasman sued First Nations on several theories, based on allegations that he had not been paid commissions for mortgage loans he had originated while employed at First Nations. The basis of First Nations' summary judgment motion was that Lasman was not properly licensed while he was supposedly originating these mortgage loans.

We affirm. The relevant section of the Business and Professions Code[1] strictly prohibits compensating people who originate loans unless they are licensed. According to the statute, there is no theory under which an unlicensed person can be compensated for originating a mortgage loan, and Lasman did not dispute that he was unlicensed during the relevant period. Lasman also failed to raise a triable issue of fact as to any other basis for denying the motion. The trial court properly granted First Nations' motion and rendered judgment in its favor.

# FACTS

Lasman sued First Nations in September 2011 for five causes of action, all based on the same set of facts. He alleged that in January 2011 he entered into an oral agreement with First Nations whereby he would solicit customers to take out residential mortgage loans with First Nations, prepare the necessary paperwork, and serve as liaison between First Nations and the borrowers. In return, First Nation promised to pay Lasman 80 percent of whatever it obtained from each loan. Lasman further alleged that he originated five loans funded by First Nations, but First Nations refused to pay him the agreed-upon commissions. According to Lasman, between October 2010 and March

---

[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.

2

2011 he solicited all the borrowers, personally met with them, and prepared and submitted their loan applications for processing. The loans were all funded between February and April 2011. Lasman alleged he was owed commissions on four of the five loans funded by First Nations.[2]

The court ordered Lasman and First Nations to judicial arbitration in June 2012. In November 2012, the arbitrator returned a zero award, and at the beginning of December Lasman moved for a trial de novo. Before trial could take place, however, First Nations moved for summary judgment.

The basis of First Nations' motion was Lasman's failure to obtain a mortgage loan originator license, as required by section 10166.02, subdivision (b), during part of the time he alleged he was originating mortgage loans.[3] Under section 10137, a person without a mortgage loan originator's license cannot lawfully be compensated, either directly or indirectly, for originating loans.[4] Moreover, Lasman's real estate broker's license had expired in September 2010, and he did not get it reinstated until January 2011. During the period in 2010 when he was allegedly originating mortgage loans, he did not even have a valid real estate broker's license.

First Nations also submitted evidence that (1) First Nations had never hired Lasman and could not have considered him for employment because he was not properly

---

[2] The five causes of action alleged in the complaint are promissory fraud, quantum meruit, declaratory relief, Labor Code violations for unpaid wages, and unfair competition.

[3] Section 10166.02, subdivision (b), provides: "(b) No individual may engage in business as a mortgage loan originator under this article without first doing both of the following: [¶]
 (1) Obtaining and maintaining a real estate license pursuant to Article 2 (commencing with Section 10150). [¶]
 (2) Obtaining and maintaining a real estate license endorsement pursuant to this article identifying that individual as a licensed mortgage loan originator." The requirement to obtain a mortgage loan originator's license, in addition to a real estate license, became effective on January 1, 2011.

[4] Section 10137 provides, in pertinent part, "It is unlawful for any licensed real estate broker to employ or compensate, directly or indirectly, any person for performing any of the acts within the scope of this chapter who is not a licensed real estate broker, or a real estate salesperson licensed under the broker employing or compensating him or her, or to employ or compensate, directly or indirectly, any licensee for engaging in any activity for which a mortgage loan originator license endorsement is required, if that licensee does not hold a mortgage loan originator license endorsement; provided, however, that a licensed real estate broker may pay a commission to a broker of another state."

3

licensed and (2) First Nations had taken over the loans about which Lasman was now complaining with the understanding that he would not be paid for them. First Nations submitted excerpts from Lasman's deposition transcript and declarations from three First Nations employees who had been present during all of the interactions between Lasman and the company. As part of its reply evidence, First Nations submitted additional excerpts from Lasman's deposition and his responses to form interrogatories.

Lasman did not dispute any of the evidence submitted by First Nations. He admitted he was unlicensed during the period for which he was claiming compensation, and he admitted his lack of a written employment agreement with First Nations.[5] He also did not dispute the declaration evidence regarding the particular loans upon which he was suing, namely that First Nations had taken them over from another, slow-moving loan company as an accommodation to Lasman and his then-associate and had explicitly said it would not pay commissions to him. The only argument Lasman offered was that he had not, in fact, originated the loans; one of First Nations' officers had done so. The evidence to back up this assertion was a declaration from his attorney regarding statements made by First Nations' vice-president during the judicial arbitration.[6]

The trial court granted First Nations' motion on the ground that Lasman could not recover compensation for loans he had originated while he was unlicensed. The court dismissed Lasman's protests that there was a triable issue of fact as to who originated the loans. Lasman could not contradict the allegations of the complaint, his deposition testimony, and his discovery responses – all of which identified him as the loans' originator – and the statements from the arbitration were in any event inadmissible

---

[5]     California Code of Regulations title 10, section 2726 requires a real estate broker to have a written agreement, dated and signed by the parties, with each salesman, whether licensed as a salesman or as a broker under a broker-salesman arrangement.

[6]     The attorney declaration stated, "John Nagorski, . . . admitted while testifying [at the arbitration] that Patrick Lucas . . ., and not Avi Lasman, originated the Pope, Hudson, Avila, and Whittaker loans, which are all of the loans at issue in this action." Nagorski and Lucas are officers of First Nations.

4

pursuant to California Rules of Court, rule 3.826(c) and as hearsay. Judgment was entered on March 22, 2013.[7]

## DISCUSSION

Lasman has identified two issues on appeal. He faults the trial court for holding him to the admissions made in the complaint and during discovery that he originated the loans in question. He also argues that the trial court should not have excluded the evidence of the statement made at the arbitration.[8]

## I.        Contradictory Positions

A moving defendant may employ two types of admissions for purposes of obtaining summary judgment. One type is admissions made in pleadings. "'A defendant moving for summary judgment may rely on the allegations contained in the plaintiff's complaint, which constitute judicial admissions. As such they are *conclusive concessions of the truth of a matter and have the effect of removing it from the issues*.' [Citations.]" *Barr v. ACandS, Inc.* (1997) 57 Cal.App.4th 1038, 1055-56, disapproved on other grounds in *Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1147 .) The plaintiff may attack the pleading admissions only on the basis of mistake, inadvertence, or lack of authority. (*Ibid*.)

In his complaint, Lasman alleged that he and First Nations entered into an oral agreement whereby he would solicit residential mortgage borrowers, prepare loan applications and other documents for the loans, and serve as liaison between the borrowers and First Nations. He further alleged that his compensation was to be 80 percent of whatever First Nations received from each loan he produced. He alleged that he originated seven loans for First Nations, five of which were funded. He alleged that he solicited and met with the borrowers, prepared and submitted the loan applications for

---

[7]    On March 27, Lasman filed a motion for reconsideration, after judgment had been entered. The court issued an order setting an order to show cause regarding sanctions if the motion was not withdrawn, as it was.

[8]    First Nations has made a motion for sanctions for a frivolous appeal. We deny the motion.

5

processing, and personally oversaw the loans from pre-approval to approval. He was the only First Nations agent to contact these borrowers before funding.

Section 10166.01, subdivision (b)(1), defines "mortgage loan originator" as "an individual who takes a residential mortgage loan application or offers or negotiates terms of a residential mortgage loan for compensation or gain." As of January 1, 2011, this individual must be licensed as set forth in section 10166.02, subdivision (b) in order to receive compensation. (§ 10137; Fin. Code, § 22100.) Before January 1, this individual had to have a valid real estate broker's license. (See §§ 10131, subd. (d), 10136.) Lasman has unequivocally admitted in his complaint he was performing tasks that, after January 1, 2011, required a license he did not have.

On appeal, Lasman claims these admissions are not binding, because they are not factual but rather a non-binding "conclusion or a mixed factual-legal conclusion." Inexplicably, Lasman cites *Castillo v. Barrera* (2007) 146 Cal.App.4th 1317 (*Castillo*), a case with eerie similarities to this one, to support his argument. In *Castillo*, the plaintiff alleged he was the defendant's former boxing manager and sued his former client for breach of contract, fraud, and quantum meruit after he did not get his management percentage. (*Id*. at pp. 1320-1321.) The defendant moved for summary judgment on the ground that the plaintiff was not licensed, as required under California law for boxing managers. (*Id*. at p. 1321.) The plaintiff then claimed the allegations in his complaint were non-binding "conclusions" or "mixed factual-legal conclusions," which did not constitute judicial admissions. (*Id.* at pp. 1321, 1324.) The court examined the allegations of the complaint – in which the plaintiff repeatedly described himself as the defendant's manager – and concluded he could not change course on summary judgment. (*Id.* at pp. 1325-1326.) The court went on to hold that even if the allegations regarding his managerial status did not constitute judicial admissions, summary judgment was still properly granted because the conduct plaintiff alleged fell within the statutory definition of a manager. (*Id.* at pp. 1326-1328.)

As in *Castillo*, Lasman's allegations are not "conclusions" or "mixed factual-legal conclusions" but facts. He alleged he solicited borrowers, prepared loan applications, and submitted applications for processing. These activities meet the statutory definition of a "mortgage loan originator," just as the plaintiff's activities in *Castillo* met the definition of boxing manager. They are factual allegations, not conclusions.[9] Lasman cannot now reverse course and claim he was not the originator of the loans for which he seeks compensation.

The other kind of admission available to a moving party on summary judgment is a statement made under oath during discovery. Courts have distinguished between statements made during depositions, which are items of evidence that must be considered along with other evidence, and statements made in responses to written discovery such as requests for admissions and interrogatories, which are admissions. (*Scalf v. D.B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1522.) The written discovery responses carry more weight because they are prepared under an attorney's supervision with much more deliberation than on-the-spot answers to questions at a deposition. (*Ibid.*)

First Nations submitted several excerpts from Lasman's deposition transcript in which he identified himself as the originator of the subject loans.[10] When Lasman opposed the motion by arguing, in effect, that he had not originated the loans after all, First Nations submitted still more transcript excerpts in which Lasman asserted he had originated the loans for which he was seeking compensation.

---

[9] The court in *Castillo* contrasted the plaintiff's factual allegations about being the defendant's boxing manager with an allegation in another case that a person had been acting "within the scope of his employment," which was held to be "'at best an allegation of a mixed factual-legal conclusion drawn by the pleader from underlying facts'" and therefore not binding on summary judgment. (*Castillo, supra*, 146 Cal.App.4th at p. 1325, quoting *Bahan v. Kurland* (1979) 98 Cal.App.3d 808, 812-813.)

[10] "Q. And you're [Lasman] trying to get paid for loans that were originated by you, and you didn't have your [mortgage loan originator] license at this point in time, correct? [¶] A. [Lasman] Correct."

First Nations also submitted Lasman's responses to form interrogatories. Once again, Lasman repeated the allegations of the complaint that First Nations hired him to perform the tasks of a mortgage loan originator and to be compensated for the loans he produced. "I had an oral agreement with First Nations to be paid for originating loans." It doesn't get much more unequivocal than that.

Lasman has admitted over and over that the basis for his lawsuit was First Nations' failure to pay him for originating loans. These are judicial admissions, and their effect is to remove the truth of the matter asserted from the issues of the case. (See *Barr v. ACandS, Inc., supra,* 57 Cal.App.4th at p. 1056.) The pleadings frame the issues of the case (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258), and the pleadings in this case establish Lasman as the loans' originator. All five causes of action incorporate by reference the general allegations regarding his role in the lending process. He never requested leave to amend the complaint. Lasman cannot now be heard to maintain he was not the originator of the subject loans.

## II.        Rule of Court

The trial court invoked both hearsay and California Rules of Court, rule 3.826(c) as the basis on which to exclude Lasman's "evidence" about what happened in an arbitration.[11] This rule applies to evidence proffered in a trial de novo after a judicial arbitration. (See *Jimena v. Alesso* (1995) 36 Cal.App.4th 1028, 1030; see also Cal. Rules of Court, rule 3.810.) Lasman asserts that the references to "the trial" in the rule preclude its application in proceedings other than a trial, e.g., a motion for summary judgment.

A summary judgment motion is definitely not a trial; it does not resolve disputed facts or questions of credibility. Its sole function is to determine whether a case

---

[11]        California Rules of Court, rule 3.826(c) provides: "The case must be tried as though no arbitration proceedings had occurred. No reference may be made during the trial to the arbitration award, to the fact that there had been arbitration proceedings, to the evidence adduced at the arbitration hearing, or to any other aspect of the arbitration proceedings, and none of the foregoing may be used as affirmative evidence, or by way of impeachment, or for any other purpose at the trial."

8

should go to trial – whether there are any factual issues that require a trier of fact to resolve. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843, 850, 855.) This does not necessarily mean, however, that evidence adduced at an arbitration hearing is admissible later in the same case. The court rule is clearly founded on the desire to encourage parties to participate with at least some enthusiasm in a proceeding ordered by the court, on the theory that they have nothing to lose. If all parties agree with the arbitrator's decision, the dispute ends. If someone disagrees, the case can go forward de novo, as if arbitration had never happened.[12] (See *Jimena v. Alesso, supra,* 36 Cal.App.4th at p. 1031.) The prospect that a statement made during arbitration may be turned against one of the participants later on, only excepting during trial, defeats the promise of a subsequent blank slate as an incentive to give judicial arbitration a real try.

Assuming the issue is properly before us – in light of Lasman's conclusive admissions that he originated the loans – we need not decide whether the trial court correctly applied the rule to the statements in Lasman's attorney's declaration. Even if the evidence was wrongly excluded, the outcome does not change. In order for an evidentiary ruling to constitute reversible error, it is not enough that the ruling be wrong. It must also be prejudicial. (*Simandle v. Vista de Santa Barbara Associates* (2009) 178 Cal.App.4th 1317, 1324; *Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431-1432 [error not reversible unless result more favorable to appellant without error].)

We cannot see how excluding evidence that someone other than Lasman originated the loans could prejudice him or, to put it another way, how admitting this evidence would create a triable issue of fact as to whether he was entitled to compensation from First Nations. If he did originate the loans, then, of course, he cannot be compensated because, as he himself admitted, he did not have the proper licenses at

---

[12] Along these lines, Code of Civil Procedure section 1141.24 severely limits discovery after a judicial arbitration, to prevent the proceeding from being used as a discovery device.

the time. If he did *not* originate the loans, then, of course, he also cannot be compensated because he did nothing to earn any compensation. The complaint unequivocally alleged that he was supposed to be paid 80 percent of whatever First Nations got from the loans he produced. If he produced no loans, he gets 80 percent of nothing.[13]

The existence of other causes of action in the complaint does not alter the judgment. The quantum meruit cause of action fails because an unlicensed person cannot be compensated under any theory for originating mortgage loans. Lasman presented no evidence of any other services he rendered that would create a triable issue of fact as to his entitlement to compensation from First Nations.[14] The wage claims fail because Lasman has admitted facts establishing that he was not a First Nations employee. The declaratory relief and unfair competition claims depend on the viability of Lasman's claims for compensation for originating mortgage loans.

Although the trial court spoke consolingly to Lasman about the unfairness of denying him compensation, we do not share this sentiment. Lasman knew, and admitted he knew, he had to have a certain license to be paid for the work he claimed to be doing. This requirement was not an example of bureaucratic red tape. Qualifying for a mortgage loan originator license meant completing at least 20 hours of education courses, including three hours of federal law and regulations, three hours of ethics, and

---

[13] Lasman's counsel referred vaguely at the hearing on the motion for summary judgment to other tasks a person can perform in connection with a mortgage loan that do not require a license. The problem with this afterthought, as the trial court pointed out, is that the complaint alleged nothing along these lines and Lasman submitted no evidence to substantiate any such activity.

[14] In his reply brief, Lasman reversed course yet again, arguing that he is entitled to compensation for at least two of the loans, because he was "fully licensed" when he originated them, while working for Wells Fargo. He also argued that he had been hired to be a manager (and therefore presumably did not need a license) and was entitled to compensation.

This second u-turn is no more compelling than the first one, even if we were to consider an argument raised for the first time in a reply brief (see *Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4) that contradicted the argument on which the opening brief was based. Lasman submitted no evidence that he was "fully licensed" when he originated *any* of the loans; his admission that his real estate broker's license expired in September 2010 and was not renewed until January 2011,suggested that he was not properly licensed under either the old or the new regime when he began originating the subject loans in October 2010. As for being hired as a manager, the record citation on which he based this argument referred to his being hired in that position by another company, not First Nations.

two hours of training on standards for the "nontraditional mortgage product marketplace." (§ 10166.06, subd. (a).)  In light of the havoc wreaked upon the nation's economy in the last several years, this does not seem like too much to ask.  Apparently, however, it was too much for Lasman to undertake, despite his repeated assurances to representatives of First Nations that he would obtain the proper credentials.  They, in turn, repeatedly informed him that First Nations would not hire him without this license, as he has admitted.  He is the architect of his present situation.

## DISPOSITION

The judgment is affirmed.  Respondent is to recover its costs on appeal. Respondent's motion for sanctions for a frivolous appeal is denied.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


FYBEL, J.

11