[Civ. No. 54656. Second Dist., Div. One. Apr. 11, 1979.]

WILLIE ALBERT WILSON et al., Plaintiffs and Appellants, v.
ALL SERVICE INSURANCE CORPORATION,
Defendant and Respondent.

COUNSEL

Goodman, Hirschberg & King, King & Seligsohn and David Kamin for Plaintiffs and Appellants.

Bolton, Hemer & Dunn and Donald H. Moore for Defendant and Respondent.

OPINION

LILLIE, Acting P. J.—Plaintiffs commenced this action for damages allegedly sustained by them as a result of defendant insurance broker's having obtained for them a policy of automobile insurance issued by an insurance carrier which subsequently became insolvent after the occurrence of an accident covered by the policy. Plaintiffs appeal from summary judgment entered in defendant's favor.

The complaint contains five causes of action. The first (negligent placement of insurance) alleges: defendant, All Service Insurance Corporation, is a licensed insurance broker, on July 23, 1974, defendant agreed to obtain a policy of automobile insurance for plaintiffs Willie and Yvonne Wilson; through defendant's efforts Transnational Insurance Company, on August 18, 1974, issued to plaintiffs a policy of automobile

insurance which included uninsured motorist coverage (Ins. Code, § 11580.2); defendant owed plaintiffs the duty to use reasonable care in obtaining insurance from a responsible insurance carrier, which duty included the obligation to investigate the financial stability of the issuing insurance carrier; in selecting Transnational as plaintiffs' insurance carrier, defendant breached its duty to plaintiffs by failing adequately to investigate Transnational's ability to pay claims arising under the policy; had defendant made such an investigation, it would have learned that Transnational "was of questionable financial stability, and had questionable ability to meet any claims which might be made pursuant to the policies of insurance" issued by it.

It further alleged that on September 3, 1974, while the Transnational policy issued to plaintiffs was in effect, Rona, minor child of plaintiffs Willie and Yvonne Wilson, sustained bodily injuries through the negligence of an uninsured motorist; as a result of such accident plaintiffs Willie and Yvonne Wilson suffered severe emotional distress and physical injuries; following the accident plaintiffs presented to Transnational, pursuant to the uninsured motorist coverage afforded by the policy, a claim of $15,000 on behalf of Rona and a claim of $15,000 on behalf of Willie and Yvonne; on September 4, 1975, while the claims were pending, Transnational was declared insolvent and placed in liquidation by the Insurance Commissioner; in a reasonable, good faith effort to mitigate damages, plaintiffs settled their claims against Transnational for a total of $10,000; this sum was less than the actual value of the claims; but was fair and reasonable in view of Transnational's insolvency and the pending of liquidation proceedings against it; prior to the commencement of such proceedings, plaintiffs placed Transnational on notice that it was acting in bad faith in connection with their claims under the policy; as a result of Transnational's bad faith, each plaintiff was entitled to punitive damages in excess of $50,000.

The first cause of action concluded that as a "direct and proximate" result of defendant's negligence in failing to select a solvent insurance carrier for plaintiffs, they were denied (1) a major portion of the benefits to which they were entitled under the policy's uninsured motorist coverage, namely: $15,000 for Rona and $15,000 for Willie and Yvonne jointly, less the $10,000 received from Transnational, or a net total of $20,000; and (2) damages in the sum of at least $50,000 for each plaintiff arising out of the bad faith conduct of Transnational.

The four remaining causes of action incorporate all of the foregoing and seek recovery upon the following theories, respectively: breach of implied agreement to use reasonable skill in selecting an insurance carrier; breach of express agreement to procure a policy of automobile insurance from a carrier which would promptly pay claims arising under the policy's uninsured motorist coverage; breach of fiduciary duty to use care, skill and loyalty in obtaining automobile insurance; and breach of implied warranty that the policy issued was fit for plaintiffs' purposes.

After filing an answer, defendant moved for summary judgment (Code Civ. Proc., § 437c); the motion was granted. Summary judgment was entered in favor of defendant and against plaintiffs.

The complaint discloses the defendant's liability is predicated on a breach of its alleged duty to plaintiffs to investigate Transnational's financial condition before having placed automobile insurance for plaintiffs with that carrier. If no such duty exists, plaintiffs are not entitled to recover the damages sought herein.

■　　Whether a defendant owes a duty of care in a given situation is a question of law for the court. (*Peter W.* v. *San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814, 822 [131 Cal.Rptr. 854]; *Rainer* v. *Grossman* (1973) 31 Cal.App.3d 539, 542 [107 Cal.Rptr. 469]; *Nevarez* v. *Thriftimart, Inc.* (1970) 7 Cal.App.3d 799, 803 [87 Cal.Rptr. 50].) In order to determine whether defendant owed plaintiffs a duty to investigate Transnational's financial condition, it is necessary to consider provisions of the Insurance Code governing the financial qualifications of an insurer to conduct business in this state.

Insurance Code section 700 provides in pertinent part: "(a) A person shall not transact any class of insurance business in this state without first being admitted for such class. Such admission is secured by procuring a certificate of authority from the commissioner. Such certificate shall not be granted until the applicant conforms to the requirements of this code and of the laws of this state prerequisite to its issue. . . . [¶] (c) After the issuance of a certificate of authority, the holder shall continue to comply with the requirements as to its business set forth in this code and in the other laws of this state."

Prior to admission, each insurer must file with the Insurance Commissioner a certified copy of its last annual statement or a verified financial statement disclosing its condition and affairs. (Ins. Code, § 706.) Before

an incorporated insurer may lawfully transact business in this state, it must meet specified requirements as to paid-in capital. (*Id.,* § 700.01.) In addition to the paid-in capital requirements certain requirements as to surplus must be met before an insurer will be issued a certificate of authority. (*Id.,* § 700.02.) The Insurance Commissioner is required to examine the business and affairs of a domestic insurer before issuing to it an original certificate of authority. (*Id.,* § 730.) In the case of a foreign insurer, the commissioner may examine its affairs and business, or he may authorize such an investigation to be made by the insurance authorities of the state in which the insurer is organized. (*Id.,* § 731.) The commissioner may also examine the business and affairs of any admitted insurer whenever he deems it necessary, or when he is requested to do so by verified petition showing that the insurer is insolvent signed by 25 persons interested as shareholders, policyholders or creditors of the insurer. (*Id.,* § 730.) In making such examination the commissioner has free access to all books and papers of the insurer. (*Id.,* § 733.) Every insurer doing business in the state is required to file a detailed financial statement with the Insurance Commissioner on or before March 1 of each year, showing its condition and affairs as of the preceding December 31 (*id.,* §§ 900, 900.7), and to publish a synopsis as adjusted by the commissioner to show the true condition of the insurer (*id.,* § 901). The statement must show the details relative to capital stock or paid-in capital (*id.,* §§ 905, 906), property or assets owned (§ 907), liabilities (§ 908), income (§ 909), expenditures (§ 910), and amount of premiums on insurance on subject matter in this state (§ 911). The Insurance Commissioner may suspend or revoke the certificate of authority of an insurer which knowingly files a false financial statement. (*Id.,* § 900.8.) Whenever the commissioner finds that the investments of an admitted insurer are not so made as to make available within a reasonable time sufficient moneys to meet promptly any demand which might in the ordinary course of business be properly made against the insurer, he may order it to cease to effect new contracts of insurance until its financial circumstances have changed sufficiently to remove such condition. If the insurer fails to comply with such order, the commissioner may suspend or revoke its certificate of authority. (*Id.,* § 706.5.)

Thus, the Insurance Code prescribes financial requirements both for the issuance of a certificate of authority admitting an insurer to transact business in this state, and for an admitted insurer's right to continue conducting business pursuant to its certificate. ■ The code imposes on the Insurance Commissioner the continuing duty to oversee the financial condition of an insurer holding a certificate of authority, and

gives the commissioner the power necessary to execute such duty. It would be superfluous, and would create a conflict with the regulatory scheme outlined in the Insurance Code, to impose upon an insurance broker a similar duty to ascertain the financial soundness of an insurer. Moreover, the imposition of such a duty would be meaningless inasmuch as a broker has no power to compel an insurer to divulge information regarding its financial condition. Accordingly, we hold that an insurance broker, such as defendant, owes no duty to its clients to investigate the financial condition of an insurer before placing insurance with it on their behalf. If a broker places insurance with an insurer conducting business pursuant to a certificate of authority, the broker has fulfilled its duty to its clients.

In support of its motion for summary judgment, defendant submitted the declaration of Joe Morton, deputy insurance commissioner, in which the declarant stated that a certificate of authority to conduct business as an insurer was issued to Transnational on November 2, 1956, and remained in effect until September 4, 1975, when the Insurance Commissioner was appointed liquidator of Transnational by order of the court. Thus, Transnational was authorized to conduct business on August 18, 1974, when it allegedly issued its policy of automobile insurance to plaintiffs.

The declaration submitted by defendant states facts establishing a complete defense to plaintiffs' action; plaintiffs' declaration in reply does not show a triable issue of fact with respect to that defense. Under these circumstances, the trial court properly entered summary judgment in favor of defendant. (See Code Civ. Proc., § 437c; *Loma Portal Civic Club v. American Airlines, Inc.* (1964) 61 Cal.2d 582, 588 [39 Cal.Rptr. 708, 394 P.2d 548]; *State Medical Education Bd.* v. *Roberson* (1970) 6 Cal.App.3d 493, 499-500 [86 Cal.Rptr. 258]; *Kassan* v. *Bledsoe* (1967) 252 Cal.App.2d 810, 813 [60 Cal.Rptr. 799].)

We are mindful of the rule that a defendant moving for summary judgment must show clearly that the plaintiff's action has no merit, and that a plaintiff whose cause of action is based on more than one theory will not be subject to summary judgment where the defendant's declaration shows that only one of the theories cannot be established. (*Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 127 [109 Cal.Rptr. 724].) The first count of plaintiffs' complaint is based on the theory that defendant breached its duty to investigate the financial condition of Transnational before placing

insurance with that carrier on plaintiffs' behalf. Each of the four remaining counts incorporates all of the allegations of the first and, no matter how denominated (breach of express and implied agreements, breach of fiduciary duty, breach of warranty), depends for its validity upon the existence of an alleged duty on defendant's part to have looked beyond Transnational's certificate of authority by making an independent investigation of its financial condition. Since no such duty exists, defendant is not liable to plaintiffs under any of the theories pleaded.

The judgment is affirmed.

Thompson, J., and Hanson, J., concurred.

A petition for a rehearing was denied May 11, 1979, and appellants' petition for a hearing by the Supreme Court was denied July 5, 1979.