Luther G. WYRICK & Alta C. Wyrick,
Appellants–Plaintiffs,

v.

James HARTFIELD, Jr. d/b/a Hartfield
Company, Appellee–Defendant.

No. 22A04–9412–CV–515.

Court of Appeals of Indiana.

Sept. 5, 1995.

Gary D. Miller, Vissing, Read, Mosley, Miller, Grayson & Carmichael, Jeffersonville, for appellants.

E. Michael Ooley, Jeffrey L. Hansford, Boehl Stopher & Graves, New Albany, for appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiffs–Appellants Luther G. and Alta C. Wyrick (hereinafter referred to individually by name or collectively as "Wyrick") appeal the trial court's grant of summary judgment in favor of Defendant–Appellee James Hartfield, Jr. d/b/a The Hartfield Company (Hartfield).

We affirm.

### ISSUE

Wyrick raises two issues for review, which we consolidate and restate as: whether the

trial court erred in granting Hartfield's summary judgment motion.

### FACTS

Hartfield, an insurance broker/agent in New Albany, was contacted by Wyrick in the summer of 1985. Wyrick requested that Hartfield provide quotes on "a single premium joint and survivor immediate annuity with 100% survivor benefits." (R. 50). Hartfield provided a quote for an annuity sold by Executive Life Insurance Company. In June of 1985, Wyrick tendered $301,857.47 for the purchase of the annuity.

For approximately six years, from June, 1985, until May, 1991, Wyrick received the full monthly annuity benefit of $2800.00 from Executive Life. Unfortunately, Executive Life experienced financial problems in 1991 and eventually ended up in a conservatorship. As a result of the intervention of the insurance commissioner in California, Executive Life annuitants, including Wyrick, began receiving reduced benefits. The amount of future benefits is uncertain.

Wyrick filed a complaint against Hartfield in June of 1992. The complaint, inter alia, alleged that Hartfield "carelessly, negligently and without due diligence and reasonable care recommended that [Wyrick] replace the Transamerica Life Insurance and Annuity Company annuity with an annuity purchased from Executive Life Insurance Company." (R. 5). The complaint further alleged that Wyrick was damaged by Hartfield's negligence.

Hartfield filed a motion for summary judgment, alleging that as a matter of law he had no duty to give special advice to Wyrick about the annuity. The trial court granted the motion. Wyrick now appeals.

### DISCUSSION AND DECISION

Wyrick contends that the trial court erred in granting summary judgment. Wyrick argues that a genuine issue of material fact exists on the question of whether a long-standing special relationship existed between he and Hartfield which required Hartfield to provide advice on the investment. Wyrick also argues that a genuine issue of material fact exists on the question of whether a special relationship existed.

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. Ind.Trial Rule 56(C); Fawley v. Martin's Supermarkets, Inc. (1993), Ind.App., 618 N.E.2d 10, 12, trans. denied. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact. T.R. 56(C); Campbell v. Criterion Group (1993), Ind.App., 613 N.E.2d 423, 428, on reh'g 621 N.E.2d 342. Once the moving party makes a prima facie showing of the non-existence of a genuine issue of material fact, the burden shifts to the non-moving party to set forth specific facts showing the existence of a genuine issue for trial. T.R. 56(E); Campbell, 613 N.E.2d at 428. Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. Fawley, 618 N.E.2d at 12.

An insurance broker who undertakes to procure insurance for another is an agent of the proposed insured, and owes the principal a duty to exercise reasonable care, skill, and good faith diligence in obtaining the insurance. Craven v. State Farm Mutual Automobile Insurance Co. (1992), Ind. App., 588 N.E.2d 1294, 1296, reh'g denied. There is no duty to advise the principal concerning the procurement of insurance absent a showing of "an intimate long term relationship between the parties or some other special circumstance." Id. at 1297. Some of the factors relevant to a determination of whether a long term relationship or special circumstance exists include (1) the broker's exercise of broad discretion in servicing the insured's needs; (2) the broker's counseling of the insured concerning specialized insurance coverage; (3) the broker's declaration that he is a highly-skilled insurance expert, coupled with the insured's reliance upon the expertise; and (4) the broker's receipt of compensation, above the customary premium paid, for expert advice provided. Parker v. State Farm Mutual Automobile Insurance Co. (1994), Ind.App., 630 N.E.2d 567, 570, trans. denied. The question of whether a

duty is owed to a particular plaintiff is a question of law. *United Farm Bureau Mut. Ins. Co. v. Cook* (1984), Ind.App., 463 N.E.2d 522, 527.

■ In the present case, Wyrick and Hartfield clearly did not have a long-term relationship which would create a duty to advise. It is the *"nature* of the relationship, and not merely the years associated therewith, that triggers the duty to advise." *Parker,* 630 N.E.2d at 569. (Emphasis in original). The evidence shows that the "relationship" between Wyrick and Hartfield consisted of three transactions over a thirteen year period. Wyrick first met Hartfield in 1972 when the hospital where he worked decided to allow employees to participate in a tax-sheltered annuity program. Hartfield was one of three local agents who was allowed to make proposals to employees. Wyrick talked to the agents and decided to purchase an annuity through Hartfield with Transamerica. In May of 1977, Wyrick decided, without contacting Hartfield, to switch to an annuity with another company through an agent not associated with Hartfield. Wyrick stayed with Lincoln National until 1982, when he had a chance meeting with Hartfield as he was walking the halls of the hospital. At that time, Hartfield mentioned to Wyrick that Transamerica was paying a higher rate than Lincoln National. Wyrick switched back to Transamerica through Hartfield. The third transaction occurred when Wyrick contacted Hartfield and gave him a week to get quotes on the type of annuity now in question. He then purchased the Executive Life annuity. These transactions do not establish the type of long-term relationship contemplated by our case law which would create a duty to advise.

In addition, there is no question of fact concerning the existence of a special relationship which would create a duty to advise.

Hartfield did not exercise broad discretion in servicing Wyrick's insurance needs; he was not asked, nor did he undertake, to provide analysis or periodic review of such needs. The annuity sold was the type requested by Wyrick; it was not sold to him as a type customized to his needs. Furthermore, there is no question that Hartfield was not paid a separate fee to provide expert advice. He was paid the standard commission paid for procuring the annuity. As a matter of law, there was no special circumstance creating a duty to advise.[1]

■ Wyrick further contends that Hartfield breached his duty to exercise reasonable care in procuring the annuity. Specifically, he argues that Hartfield did not carefully ascertain the financial stability of Executive Life. The evidence establishes that Hartfield ascertained that Executive Life was rated "A+ Excellent" by A.M. Best and "AAA" by Standard & Poors, and was duly authorized to conduct business in the State of Indiana by the Insurance Commission at the time Hartfield procured the annuity for Wyrick. The duty of reasonable care did not require Hartfield to make any further inquiries. As stated by the California Court of Appeals in *Wilson v. All Service Insurance Corp.* (1979), 91 Cal.App.3d 793, 798, 153 Cal.Rptr. 121:

> It would be superfluous, and would create a conflict with the regulatory scheme outlined in the Insurance Code, to impose upon an insurance broker a [duty similar to the State's] to ascertain the financial soundness of an insurer. Moreover, the imposition of such a duty would be meaningless inasmuch as a broker has no power to compel an insurer to divulge information regarding its financial condition.[2]

As a matter of law, Hartfield fulfilled his duty to Wyrick when he procured an annuity

---

1. Wyrick states that Hartfield provided a partially incorrect response to his question about whether the annuity was insured. Wyrick also states that Hartfield knew that he was investing his life savings into the annuity. Hartfield's response to Wyrick's question and his knowledge of the source of the funds used by Wyrick to purchase the annuity did not create a duty where one did not previously exist.

2. Our Insurance Code is similar to the California Code. The insurer is required to file appropriate information before transacting business in the state. IND.CODE 27–1–17–1 et seq. Furthermore, the Insurance Commissioner has the broad authority to protect Indiana policyholders from unstable insurers who are in "hazardous financial condition." I.C. 27–1–17–9.

with an insurer considered reliable by the experts and authorized to conduct business by the State.

## CONCLUSION

There is no genuine issue of material fact preventing the grant of summary judgment. Accordingly, the trial court did not err in granting judgment as a matter of law.

Affirmed.

KIRSCH, J., concurs.

CHEZEM, J., dissents with separate opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent. I believe that the facts may sufficiently show that there was a special relationship between Wyricks and Hartfield, giving rise to a duty to advise Wyricks concerning the procurement of the annuity. The facts designated to the trial court are that over the years, Hartfield counseled Wyricks on their retirement investments. In 1982, Hartfield contacted Wyricks and recommended the transfer of their annuity to a Transamerica annuity; they did so. When Wyricks contacted Hartfield in 1985, they explained that they were in need of an investment for their life savings that would provide a steady stream of income during retirement and during the life of their survivor. Hartfield recommended an annuity from Executive Life and, acting on that recommendation, Wyricks purchased the annuity in question. Hartfield did not explain to Wyricks that their investment was irrevocable and that less than one-third of it was insured.

I believe that these facts could show that a special relationship existed, and that the determination of whether a special relationship did exist should be made by the fact-finder at trial. I would therefore reverse the grant of summary judgment.